IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PATRICK L MIMS, | ) | |
| | ) | |
| Petitioner, | ) | No C 07-0148 VRW (PR) |
| | ) | |
| vs | ) | ORDER DENYING PETITION |
| | ) | FOR A WRIT OF HABEAS |
| R L AYERS, Warden, | ) | CORPUS |
| | ) | |
| Respondent. | ) | |
| | ) | |

    Patrick L Mims, a state prisoner incarcerated at San Quentin State Prison, seeks a writ of habeas corpus under 28 USC § 2254 challenging the California Board of Parole Hearings' ("BPH" or "board") January 10, 2006 decision to deny him parole.

    Per order filed on June 11, 2007, the court found that Mims' claim that the BPH's decision does not comport with due process appears colorable under § 2254, when liberally construed, and ordered respondent to show cause why a writ of habeas corpus should not be granted.

|   |   |
|---|---|
| 1 | Respondent has filed an answer to the order to show cause |
| 2 | and petitioner has filed a traverse. |

### I

On December 22, 1988, Mims and a friend approached two men waiting for a trolley in downtown San Diego in an attempt to purchase marijuana. An argument between Mims' friend and one of the men ensued and escalated into a physical scuffle. As the victim approached the fight, he was stabbed by Mims once in the chest with a knife and later died from the wound. Mims then fled the scene of the crime. Four days later, he surrendered to the San Diego police, admitted his part in the altercation and stabbing of the victim, and was taken into custody. Probation Rep at 1 (Resp't Ex B).

On September 5, 1989, Mims was convicted of second degree murder by a jury in San Diego County superior court. The court also found that Mims had suffered a prior felony conviction and sentenced him to an indeterminate term of 20 years to life in state prison.

On January 10, 2006, Mims appeared before the BPH for his second parole consideration hearing. The BPH found him unsuitable for parole and denied him a subsequent hearing for two years.

Mims unsuccessfully challenged the board's decision in the state superior, appellate and supreme courts.

After the Supreme Court of California denied his petition for review on November 1, 2006, the instant federal petition for a writ of habeas corpus followed.

II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 USC § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." White v Lambert, 370 F3d 1002, 1009-10 (9th Cir 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 USC § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id at § 2254(d). Under this standard, federal habeas relief will not be granted "simply because [this] court concludes

in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v Taylor, 529 US 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 USC § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id at 412; Clark v Murphy, 331 F3d 1062, 1069 (9th Cir 2003).

### III

Mims seeks federal habeas corpus relief from the BPH's January 10, 2006 decision finding him unsuitable for parole and denying him a subsequent hearing for two years on the ground that the decision does not comport with due process. Petitioner claims that the BPH's decision was "arbitrary" and not supported by evidence in the record, and that it relies primarily on unchanging factors such as his commitment offense and pre-commitment criminal and social history.

/
/

4

## A

Under California law, prisoners serving indeterminate life sentences, like Mims, become eligible for parole after serving minimum terms of confinement required by statute. <u>In re Dannenberg</u>, 34 Cal 4th 1061, 1069-70 (2005). At that point, California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal Penal Code § 3041(b). Regardless of the length of time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal Code Regs tit 15, § 2402(a). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. See id § 2402(b) – (d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole which cannot be denied without adequate procedural due process protections." <u>Sass v California Bd of Prison Terms</u>, 461

F3d 1123, 1128 (9th Cir 2006); <u>McQuillion v Duncan</u>, 306 F3d 895, 902 (9th Cir 2002).  It matters not that a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." <u>Biggs v Terhune</u>, 334 F3d 910, 914-15 (9th Cir 2003).

Petitioner's due process rights require that "some evidence" support the BPH's decision finding him unsuitable for parole.  <u>Sass</u>, 461 F3d at 1125 (holding that "some evidence" standard for disciplinary hearings outlined in <u>Superintendent v Hill</u>, 472 US 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); <u>Sass</u>, 461 F3d at 1125 (same); <u>Biggs</u>, 334 F3d at 915 (same); <u>McQuillion</u>, 306 F2d at 904 (same).  This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPH] were without support or otherwise arbitrary." <u>Hill</u>, 472 US at 457.  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Id at 455-56 (quoted in <u>Sass</u>, 461 F3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability.  <u>Biggs</u>, 334 F3d at 915; <u>McQuillion</u>, 306 F3d at 904.  Relevant in this inquiry "is whether the

prisoner was afforded an opportunity to appear before, and present evidence to, the board." <u>Morales v. California Dep't of Corrections</u>, 16 F3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 US 499 (1995).  In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. <u>Rosas v. Nielsen</u>, 428 F3d 1229, 1232 (9th Cir 2005).

B

Mims claims that the BPH's January 10, 2006 decision finding him unsuitable for parole is not supported by any evidence.  But a review of the record shows that the board provided some evidence supporting its conclusion that Mims was unsuitable for parole and "would pose an unreasonable risk of danger to society and a threat to public safety if released from prison."  Hr'g Tr at 103 (Resp't Ex D); see Cal Code Regs tit 15, § 2401(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).  It also shows that the BPH afforded Mims and his counsel an opportunity to speak and present Mims' case at the hearing, gave them time to review Mims' central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole.  Hr'g Tr at 4-6, 103.

/

The board relied on four circumstances tending to show unsuitability for parole to support its conclusion. First, the board examined the commitment offense and found that the offense was "carried out in an especially cruel manner . . . which demonstrates an exceptionally callous disregard for human suffering" and the "motive for the crime was very trivial in relation to the offence." Id at 104. Second, the board found that Mims' prior arrests and convictions demonstrated an "escalating pattern of criminal conduct and violence." Id. Third, the board found Mims to have an unstable social history involving the "excessive" use of illegal drugs and alcohol. Id. And fourth, the board found Mims' rehabilitative gains to be too recent to outweigh the factors showing unsuitability. Id at 105.

The board explained that the facts surrounding the commitment offense indicated that the offense was carried out in a cruel manner which showed a callous disregard for human suffering and that the motive for the crime was trivial in relation to the offense. Id at 103; see Cal Code Regs tit 15, §2401(c)(1)(D)-(E) (listing callous disregard for human suffering and trivial motive as factors tending to show unsuitability for parole). After a physical fight broke out between his friend and the victim's friend, Mims stepped towards the victim, who was walking towards the altercation, and stabbed him once in

the chest with a knife, directly piercing his heart. Hr'g Tr at 14-15. During the parole hearing, Mims testified that he "jabbed" the victim with the knife because it was "code to have your buddy's back." Id at 15. Mims also stated that the crime was committed in "an angry moment" where he just "exploded" due to the anger he had at the time. Id. The board noted that after stabbing the victim in the heart, Mims then grabbed his friend and fled the scene of the crime, even though he knew the victim was bleeding. Id at 18. The board found that Mims essentially left the victim to die rather than call for help, demonstrating an "exceptionally callous disregard for human suffering." Id at 103. The board also found Mims' motive of trying to help his friend get away from the fight "inexplicable" and "very trivial" in relation to the murder. Id at 103.

The board surveyed Mims' criminal record and found an "escalating pattern of criminal conduct and violence" evidenced by prior offenses including robbery with use of a deadly weapon, accessory to a burglary, carrying a concealed firearm and assault on a peace officer. Id at 104; see Cal Code Regs tit 15, §2401(c)(2) (listing previous record of violence as a factor tending to show unsuitability for parole). Mims spent time as an adult in jail and on probation for these past offenses. Hr'g Tr at 26-29. The board found that Mims failed to profit from

these previous attempts to correct his criminality. Id at 104.

The board examined Mims' history of illegal drug use and alcohol consumption, which coincided with his criminal activity. Id at 29, 31. At the hearing, Mims testified to both using and selling drugs in the period of his life before and during the time of the murder. Id at 12. The board concluded that Mims had an "unstable social history" in regards to his prior excessive drug and alcohol abuse. Id at 104; see Cal Code Regs tit 15, §2401(c)(3) (listing unstable social history as a factor tending to show unsuitability for parole).

The board found that Mims' rehabilitative gains were too recent. Hr'g Tr at 105. Although the board noted that Mims had done "a tremendous amount of work" while incarcerated, it concluded that Mims must demonstrate the ability to maintain his prison gains over a longer period of time before being found suitable for parole. Id at 105-106, 108. The board stated that it was not yet assured that Mims' gains were "sincere" and "genuine." Id at 109.

The board also examined other factors tending to support suitability for parole, including Mims' favorable psychological report indicating a low-risk of re-offending, being discipline-free throughout his incarceration, realistic parole plans to live with family,

10

marketable skills and two job offers, obtaining an associate degree and other vocational certificates, and participation in many self-help courses. Id at 105-106. The board recognized that Mims was doing "absolutely everything" he could and recommended that he "keep up the good work." Id at 108-109. But it concluded that "these positive aspects of his behavior do not outweigh the factors of unsuitability." Id at 107.

    The state superior court and court of appeal affirmed the decision of the board. The superior court examined the BPH's considerations and concluded that the board based its determination of unsuitability for parole on some evidence, including the nature of the commitment offense, prior criminal and social history, and recent gains. See <u>In re Mims</u> No HC 18488, slip op at 6-7 (Cal Super Ct May 10, 2006) (Resp't Ex E). The court of appeal similarly found that the record showed that the board "considered the proper factors in an individualized manner" and that "there is some evidence to support the Board's decision." <u>In re Mims</u>, No D048750, slip op at 2 (Cal Ct App Aug 16, 2006) (Resp't Ex F). The appellate court specifically found that the fact that Mims "randomly stabbed and killed a young man who was waiting for the trolley" constituted some evidence. Id.

    The state courts' rejection of Mims' due process claim was not contrary to, or involved an unreasonable

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

application of, the Hill standard, or was based on an unreasonable determination of the facts.  See 28 USC § 2254(d).  The BPH's decision to deny parole was supported by some evidence in the record bearing some indicia of reliability. See, eg, Irons, 505 F3d at 852-53 (upholding denial of parole based solely on gravity of offense); Sass, 461 F3d at 1129 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); Biggs, 334 F3d at 916 (same).  The inquiry under Hill is simply "whether there is any evidence in the record that could support the conclusion reached."  Hill, 474 US at 455-56 (emphasis added).  The record shows that the board had more than some evidence to support its finding of unsuitability, including the facts surrounding the murder which reasonably suggest a callous disregard for human suffering and a trivial motive, a criminal history which includes armed robbery and accessory to burglary for which Mims spent time in jail and on adult probation, an unstable social history of drug and alcohol abuse which contributed to criminal behavior, and, arguably, rehabilitative gains which were too recent to outweigh the factors of unsuitability.  Cf Cal Code Regs tit 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to

show suitability).[1]  Although the board lauded the presence of many factors tending to support suitability, it is not up to this court to "reweigh the evidence."  Powell v Gomez, 33 F3d 39, 42 (9th Cir 1994).  The board's legitimate concern with the cruel and callous nature of the crime, and Mims' criminal and social history, constitutes some evidence under Hill in support of the board's determination that Mims posed an unreasonable risk of danger to society if released from prison.  See Hill, 474 US at 455-56.

C

Mims argues that the board's continued use and reliance on unchanging factors such as his commitment offense and pre-commitment history to deny parole violates his due process rights, and conflicts with the Ninth Circuit's decisions in Biggs and Irons.  In Biggs, the Ninth Circuit upheld the initial denial of parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that, over time, denying a prisoner parole strictly because of the nature of his offense and his prior conduct "would raise serious questions involving his liberty

---

[1] Mims' claim that his positive gains were not recent does not compel a different conclusion because the board's decision was based on other factors which alone constitute some evidence under Hill.

interest in parole . . . and could result in a due process violation." Biggs, 334 F3d at 916-17.  In Irons, the Ninth Circuit again upheld the denial of a parole release date based solely on the nature of the crime, but reiterated its "hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." Irons, 505 F3d at 854.  This is not such a case.

The record shows that the BPH's January 10, 2006 decision was only the second time that Mims was denied parole.  As of that date, the board had not continually relied solely on Mims' commitment offense and pre-commitment history to deny him parole.  In its first decision in December 2001, the board relied on the commitment offense and pre-commitment history, a prison rule violation (which was later expunged) and a psychiatric report showing that Mims may pose some risk to society.  See Mims v Brown, No C04-0479 VRW (PR), slip op at 8-9 (ND Cal Mar 22, 2006) (order).  Even if the board relied primarily on unchanging factors when it denied parole a second time in January 2006, it cannot be said that the board has continually relied solely on Mims' commitment offense and pre-commitment history to deny him

1 parole. Mims' unchanging-factor claim fails because the
2 board has not continually relied solely on Mims'
3 commitment offense and pre-commitment history to deny him
4 parole and, importantly, because Mims' minimum term of 20
5 years has not yet expired. See <u>Irons</u>, 505 F3d at 853-54
6 (noting that Ninth Circuit has upheld denial of parole
7 based solely on commitment offense and/or pre-commitment
8 conduct where prisoners have not yet served minimum number
9 of years required by their sentence).

IV

12 For the reasons set forth above, the petition for a
13 writ of habeas corpus is DENIED.
14 The clerk shall enter judgment in favor of respondent
15 and close the file.
16 SO ORDERED.

_____
VAUGHN R WALKER
United States District Chief Judge

15